Dona J. FABYAN, Plaintiff-Appellant,†

v.

WAUKESHA COUNTY BOARD OF ADJUSTMENT, John Selix and Nancy Bonniwell, Defendants-Respondents.

Court of Appeals

*No. 00–3103. Submitted on briefs May 23, 2001.—Decided June 20, 2001.*

## 2001 WI App 162

(Also reported in 632 N.W.2d 116.)

†Petition to review denied.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *August E. Fabyan* of *Haight & Fabyan* of Hartland.

On behalf of the defendants-respondents, the cause was submitted on the brief of *William J. Domina,* principal assistant corporation counsel.

Before Brown, P.J., Nettesheim and Anderson, JJ.

¶ 1. NETTESHEIM, J. Dona J. Fabyan appeals from a circuit court order upholding the grant of a special exception to the floor area ratio (FAR) requirements of the Waukesha County Shoreland and Floodland Protection Ordinance to John Selix and Nancy Bonniwell (the owners) by the Waukesha County Board of Adjustment.[1] Fabyan argues that the Board acted under an incorrect theory of the law in that the grant of the special exception was actually a disguised grant of a variance pursuant to WIS. STAT. § 59.694(7)(c) (1999–2000).[2] Treating the grant as a variance, Fabyan then argues that the owners failed to demonstrate unnecessary hardship as required by the statute and *State v. Kenosha County Board of Adjustment,* 218 Wis. 2d 396, 577 N.W.2d 813 (1998). We disagree. We hold that the owners' request was properly presented as one for a special exception. Since the shoreland ordinance expressly recognizes special exceptions as authorized by § 59.694(7)(d), we conclude that the Board acted upon a correct theory of the law.

---

[1] Fabyan's appeal also challenges an earlier circuit court ruling upholding the Board's grant of a set-back variance to the owners. However, we have previously ruled that we do not have jurisdiction over this issue since Fabyan did not timely appeal that ruling.

[2] All references to the Wisconsin Statutes are to the 1999–2000 version.

## *FACTS AND PROCEDURAL HISTORY*

¶ 2. The owners live in a home on Pewaukee Lake in the Town of Delafield, Waukesha County. Their property is governed by the shoreland ordinance. Fabyan also lives in the town, residing across the lake from the owners. The dispute in this case concerns an accessory garage building that the owners proposed to construct when they built their home.

¶ 3. The history of this case is reflected in the three proceedings before the Board and the ensuing judicial review proceedings of each proceeding brought by Fabyan.

¶ 4. First Proceeding: On November 24, 1997, the Board approved the owners' request to construct a two-story, detached garage on their property. The approval included the grant of a FAR variance of 4.2%, which exceeded the 3% FAR recited in the shoreland ordinance. As a condition of the approval, the owners were required to remove an existing nonconforming garage.

¶ 5. Fabyan sought certiorari judicial review of the Board's action.[3] The case was assigned to Jefferson County Circuit Judge Jacqueline Erwin.[4] Following a hearing, Judge Erwin determined that the evidence supported the Board's determination that the FAR requirement created an unnecessary hardship for the owners. However, Judge Erwin further determined that "the degree of variance requires review." Accord-

_____

[3] Fabyan's husband, who is an attorney, joined as a petitioner in this first certiorari action, and he represented himself and his wife in this proceeding.

[4] The owners' brief advises that all members of the Waukesha County judiciary recused themselves from this case. Thus, the action was assigned to Judge Erwin.

ingly, the judge remanded the matter to the Board for further consideration of this question.[5]

¶ 6. Second Proceeding: The Board conducted the remand proceeding on February 10, 1999. The Board did not take further evidence, but it did receive memorandum from the owners and Fabyan. In their memorandum, the owners clarified that they were seeking a special exception, not a variance, to the FAR requirements of the shoreland ordinance. Fabyan argued that the special exception was nothing more than a disguised request for a variance. In its decision, the Board granted the special exception stating, in part, "The size of the garage does not require a variance from the County, only a special exception from the Ordinance which does not require the petitioner to show a hardship."

¶ 7. Fabyan followed with a second certiorari action.[6] This matter was assigned to Jefferson County Circuit Judge William Hue. In a written decision, Judge Hue determined that the evidence supported the Board's decision to grant the special exception. However, Judge Hue also ruled that the owners' request had not been properly noticed as a special exception request. Thus, the matter was again remanded for a further hearing following proper notice.

¶ 8. Third Proceeding: After giving proper notice, the Board conducted the further remand proceeding on January 26, 2000. At this hearing, both the owners and

---

[5] Judge Erwin's decision states that the matter was remanded to both the Waukesha County Board of Adjustment and the Town of Delafield Board of Zoning Appeals. However, the appellate record and the parties' briefs refer only to a remand proceeding before the County Board of Adjustment.

[6] Fabyan's husband did not join in this action as a copetitioner, but he did represent his wife in the proceeding.

Fabyan spoke to the issue. Unlike the previous proceedings, the appellate record includes a transcript of this proceeding, including the Board's deliberations. This transcript and the Board's findings of fact shed further light on the reason for the owners' FAR special exception request. The owners' property has a severe downward slope from the road towards the lake.[7] As a result, the proposed garage would require a foundation wall on the lakeside of the property to support the upper parking area, resulting in a two-tiered structure. If the excavated lower portion of the structure were filled with dirt, the area would not count against the FAR and the structure would comply with the FAR requirements. However, the owners proposed to use this lower portion for storage. As such, it would count against the FAR and would exceed the FAR requirements of the ordinance. Thus, the owners sought a FAR special exception.

¶ 9. The Board confirmed its prior grant of the FAR special exception. Among other findings of fact, the Board noted:

> The lower level of the garage will exist with or without a [FAR] special exception. With a special exception, the lower level will be excavated, finished with a concrete floor, and used for storage area. Without a special exception, the lower level will be filled with the original foundation dirt and added fill.
>
> . . . .

---

[7] As a result of this condition, the owners also required a variance from the set-back requirements of the shoreland zoning ordinance in order to satisfy the driveway slope requirements of the town of Delafield ordinances. As noted, the Board granted this variance. (*See* footnote 1).

> The footprint, appearance and exterior dimensions of the garage will be the same whether or not a floor area special exception is granted.
>
> . . . .
>
> The use of the lower level for storage purposes will allow a productive and functional use of building space that would otherwise be unavailable and of no practical use.

¶ 10. Fabyan followed with this third certiorari action, again contending that the Board's grant of the FAR special exception was actually the grant of a variance which failed to meet the unnecessary hardship requirements of WIS. STAT. § 56.694(7)(c) and *Kenosha County*.[8] In a bench decision, Judge Hue confirmed his prior ruling upholding the Board's grant of the FAR special exception. Fabyan appeals.[9]

## *DISCUSSION*

### *1. Certiorari Review and Standard of Review*

¶ 11. On certiorari review of a board of adjustment determination, we inquire (1) whether the board kept within its jurisdiction; (2) whether the board proceeded on a correct theory of law; (3) whether the

---

[8] As with the second action, Fabyan's husband was not a petitioner in this action. However, Fabyan's husband again represented his wife and he continues that representation on appeal.

[9] Fabyan sues as a "private attorney general in defense of the rights of the public." *See State ex rel. Hodge v. Turtle Lake*, 180 Wis. 2d 62, 76–80, 508 N.W.2d 603 (1977). The owners dispute Fabyan's right to claim such status under the facts of this case even if she prevails. Since we affirm the trial court's ruling against Fabyan, we need not address this issue.

board's action was arbitrary, oppressive or unreasonable and represented its will and not its judgment; and (4) whether the board might reasonably make the order or determination in question, based on the evidence. *Kenosha County*, 218 Wis. 2d at 410–11.

¶ 12. Generally, we accord a presumption of correctness and validity to a determination by a board of adjustment and in matters of discretion we may not substitute our discretion for that committed to the board. *Id.* at 415. However, Fabyan's threshold argument is that the Board proceeded upon an incorrect theory of the law by applying the law of special exceptions rather than the law of variances. To answer this issue, we must interpret the various provisions of the statutes and the shoreland zoning ordinance. That exercise presents us with a question of law that we review de novo. *See University of Wisconsin v. Dane County*, 2000 WI App 211 ¶¶ 10–11, 238 Wis. 2d 810, 818–19, 618 N.W.2d 537.

### 2. Variances and Special Exception

¶ 13. Fabyan does not argue that the evidence does not satisfy the special exception provisions of the shoreland zoning ordinance. Rather, she contends that the Board's grant of the FAR special exception is really a camouflaged grant of a variance. As such, Fabyan further contends that the evidence does not satisfy the "unnecessary hardship" requirement of variance law as set out in WIS. STAT. § 59.694(7)(c). Unnecessary hardship tests whether the owner has a feasible use of the property without the variance. *Kenosha County*, 218 Wis. 2d at 413.

¶ 14. No reported Wisconsin case has directly compared a variance with a special exception.[10] And commentators have noted that both zoning agencies and the courts have sometimes blurred the distinction between the two concepts:

> From the discussion of special exceptions in the foregoing sections, it must become obvious that an *exception* differs from a *variance*, though many do not readily recognize the distinction. This is easily understandable, for many zoning boards not only treat the definitions of the two as synonymous, but act accordingly.

Yokley, *Zoning Law and Practice*, § 20–4 at 254 (4th edition).

> While the courts occasionally have blurred the distinction between the forms of administrative relief, the basic differences between variances and special exceptions or special permits, developed in early litigation under the original New York City ordinance, have been maintained.

Anderson, *American Law of Zoning*, § 20.03 at 416 (4th edition) (footnote omitted).

¶ 15. The concept of special exceptions grew out of the rigid and difficult barriers presented by the unnecessary hardship test associated with the law of variances. One commentator has stated:

---

[10] The Board relies, in part, on *State ex rel. Shelly Oil Co. v. Common Council*, 58 Wis. 2d 695, 207 N.W.2d 585 (1973), where the supreme court equated a conditional use with a special exception use and then explained the difference between a conditional use and a variance. We do not find *Shelly* helpful to this case because here the shoreland zoning ordinance separately defines "conditional use" and "special exception".

The "special exception," the "special permit," and the use permitted subject to administrative approval, are qualitatively the same. Each involves a use which is permitted rather than proscribed by the zoning regulations. Each is allowed only upon approval of a board of adjustment or other administrative body charged with various duties and invested with certain powers in connection with the administration of the zoning regulations. . . .

. . . .

Special-permit procedures are a product of the need for flexibility in the administration of the zoning regulations, a need which was felt at a very early date. The provision for administrative variance provided relief in specific instances of practical difficulties and unnecessary hardship, but variance procedures were incapable of converting an essentially rigid system of Euclidian zoning into a flexible tool for the accommodation of unlike and sometimes incompatible uses of land.

*Id.* at 21.01, 692–93 (footnotes omitted).

¶ 16. This same commentator has noted the distinction between a variance and a special exception:

The decisive difference between these forms of relief is that a variance is "authority extended to a property owner to use his property in a manner forbidden by the zoning enactment," while an exception "allows him to put his property to a use which enactment expressly permits."

. . . .

A variance authorizes a landowner to establish or maintain a use which is prohibited by the zoning regulations. A special permit authorizes a use which is permitted by the zoning regulations, subject to the issuance of such a permit. Thus, a variance results in a deviation from the literal

import of the ordinance; a special permit results in the establishment or maintenance of a use in the location and under the circumstances mandated by the ordinance.

*Id.* at 20.03 at 416 and 21.02 at 695.

¶ 17. These distinctions are reflected in the definitions of "special exception" and "variance" as set out in the shoreland zoning ordinance:

> **Special exception:** A special or unique situation, *excluding a change in use or a use prohibited in a zoning district,* which may be authorized by the board of adjustment and is specifically set forth in the ordinance as a special exception and which may justify the waiver of the regulations applicable thereto and does not necessarily require the demonstration of an unnecessary hardship or practical difficulty.
>
> . . . .
>
> **Variance:** An authorization granted by the board of adjustment to construct or alter a building, land or structure in a manner that deviates from the dimensional or numerical standards of this ordinance. The issuance of a variance shall not have the effect of allowing a use of property otherwise prohibited and shall not allow the intensification of a use which would otherwise not be allowed other property having a similar condition or situation. *Such variance may not allow for a use which is not allowed in the Zoning District in which the property is located.*

Waukesha County Shoreland, Floodland Protection Ordinance, § 2.02 (66a) and (83a) (emphasis added).

¶ 18. In this case, the owners' desire to use the lower portion of their garage structure for storage was

not a prohibited use under the applicable zoning. Therefore, the owners did not need a variance. Instead, the owners' proposed use merely conflicted with the FAR requirements of the ordinance. As such, the proper avenue of relief was by special exception. To that end, the owners properly invoked the special exception procedure. The enabling legislation for such a procedure is WIS. STAT. § 59.694(7)(b), which authorizes the Board to "hear and decide special exceptions to the terms of the ordinance. . . ." In turn, § 3.10(4)4 of the shoreland zoning ordinance implements this procedure by allowing for a special exception to the FAR requirement. This ordinance provides, in relevant part:

> When a petitioner is proposing to have more square footage of accessory buildings than the 3% limit allows or as excepted above, *the Board of Adjustment may grant a Special Exception to the above requirement* in accordance with the procedure as outlined in Section 19 of this Ordinance. . . .

Waukesha County Shoreland, Floodland Protection Ordinance, § 3.10(4)4 (emphasis added).

¶ 19. Since the owners properly invoked the special exception procedure authorized by the statutes and implemented by the shoreland zoning ordinance, the Board proceeded under a correct theory of the law.[11]

*By the Court.*—Order affirmed.

[11] Since we hold that the Board correctly assessed the owners' *request under the law of special exceptions*, we need not address Fabyan's further argument that the evidence does not show the requisite unnecessary hardship as required by the law of variances.